# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| KEVIN THOMPSON and TARA SHEARER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| PAPERLESSPAY CORPORATION, a Florida Corporation, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiffs Kevin Thompson and Tara Shearer, individually and on behalf of all other similarly situated individuals (the "Class" as defined below), by and through the undersigned file this Class Action Complaint against Defendant PaperlessPay Corporation ("PaperlessPay" or "Defendant") and allege the following based upon personal knowledge of facts pertaining to themselves and upon information and belief based on the investigation of counsel as to all other matters.

## NATURE OF THE ACTION

1.      With this action, Plaintiffs seek to hold PaperlessPay responsible for the harms it caused them and the potentially 2 million similarly situated persons in the massive and preventable data breach discovered in February 2020 ("Data Breach" or "Breach").

2.      PaperlessPay is one of the leading e-payroll processing companies, providing payroll processing, W-2, and other HR related services across the United States and Canada.

3.      Defendant's clients are companies ("Employers") that provide Defendant with sensitive employee information to allow Defendant to provide payroll and W-2 services to Employers' employees.

4.      Plaintiffs and the Class (as further defined below) are the current and former employees ("Employees") of PaperlessPay's client companies.

5.      Through their employment, Plaintiffs and the Class were required to provide their personally identifiable information ("PII") to their respective Employers. PaperlessPay assumed the special relationship and duties that the Employers owed the Class members when it agreed to securely store the PII of Plaintiffs and the Class. PaperlessPay betrayed Plaintiffs' trust and that of the other Class members by failing to properly safeguard and protect their PII, thereby enabling cyber criminals to steal their PII.

6.      The PII provided to Employers and compromised in the Data Breach includes names, addresses, Social Security numbers, bank account number information (if this appeared on the employee's paystub), and the pay and withholding information of Plaintiffs and Class members.

7.      Not only did the hackers take Plaintiffs' and Class members' PII, but the Department of Homeland Security has discovered that Class members' PII is for sale on the dark web. This is an immediate and recognizable harm to Plaintiffs and the Class members.

8.      Due to Defendant's negligence, cyber criminals obtained and now possess everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals for years to come.

9.      For the rest of their lives, Plaintiffs and Class members will be forced to deal with the danger of identity thieves possessing their PII. Plaintiffs and Class members have already lost

2

time responding to the Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach.

10.      Plaintiffs bring this action individually and on behalf of the Class, seeking actual damages, punitive damages, restitution, and injunctive and declaratory relief, reasonable attorney fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems proper.

<strong><u>THE PARTIES</u></strong>

**Plaintiff Kevin Thompson**

11.      Plaintiff Kevin Thompson ("Thompson") is a citizen of Seabrook, Texas.

12.      Thompson was an employee of Tellepsen, a company based in Houston, Texas, until April 18, 2020. Tellepsen has more than 400 employees.

13.      As part of his employment, Thompson was required to provide Tellepsen with his PII, including the information compromised in the Data Breach. Plaintiff believes this was a standard practice for all of Tellepsen's employees.

14.      Tellepsen delegated these duties to and special relationship with Thompson to PaperlessPay, which delegation was based on PaperlessPay's experience and heavily-advertised ability to provide top-of-the-line security.

15.      On May 18, 2020, Tellepsen notified Thompson that his PII, including his name, address, Social Security number, pay and withholdings, and last four digits of his bank account number, was accessed in the Data Breach and is being offered for sale on the Dark Web.

16.      Thompson now faces an imminent and substantial likelihood of identity theft that is certainly pending, continuous and ongoing because of the Data Breach. Thompson has already spent numerous hours responding to the Data Breach, including reviewing his credit statements,

3

requesting information from credit bureaus, reviewing his transactions, and otherwise attempting to mitigate the harms of the Breach. As a direct and proximate result of the Data Breach, Thompson will need to purchase a lifetime subscription to identity theft protection and credit monitoring.

17.     Thompson had been careful to protect and monitor his identity, and he has never been a victim of identity theft. To his knowledge, the PII compromised in this Data Breach has not been compromised in any prior data breach.

**Plaintiff Tara Shearer**

18.     Plaintiff Tara Shearer ("Shearer") is a citizen of Edmonton, Alberta, Canada.

19.     Shearer is an employee of PCL Construction ("PCL"). PCL is based in Edmonton, Alberta, Canada. It has over 4,400 employees and more than 10,000 hourly tradespeople.

20.     As part of her employment, Shearer was required to provide PCL with her PII, including the information compromised in the Data Breach. Plaintiff believes this was a standard practice for all employees of PCL.

21.     On May 15, 2020, Shearer received a breach notification letter from her Employer informing her that her name, address, email address, telephone number, pay and withholding information, and Social Insurance Number were stolen in the Data Breach.

22.     Shearer now faces an imminent and substantial likelihood of identity theft that is certainly pending, continuous and ongoing because of the Data Breach. Shearer has already spent numerous hours responding to the Data Breach, including reviewing her various accounts for suspicious activity, signing up for credit monitoring, and otherwise attempting to mitigate the harms of the Breach.  As a result of the Data Breach, Shearer will be required to continuously monitor her identity and credit for the rest of her life. She is very worried about the significant risk of identity theft she now faces.

4

23.     Shearer had been careful to protect and monitor her identity, and she has never been a victim of identity theft. To her knowledge, the PII compromised in this Data Breach has not been compromised in any prior data breach.

**Defendant PaperlessPay Corporation**

24.     Defendant PaperlessPay Corporation is incorporated in the State of Florida and its principal place of business is in Jacksonville, Florida. It is a citizen of Florida.

25.     PaperlessPay is an outgrowth of a software business founded in 1994 by W. Mark Broughton. PaperlessPay now serves 1,500 clients and their subsidiaries, totaling over 2 million employees currently utilizing their services.[1] These services include providing clients and their employees with electronic payments solutions and services for Payroll & Human Resources departments. Ironically, PaperlessPay touts on its website of having created "the most secure and comprehensive online pay advice portal available in today's market."[2]

## JURISDICTION AND VENUE

26.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and members of the class are citizens of states different from Defendant.

27.     This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters in Florida and has sufficient minimum contacts with Florida. Also, the Data Breach at issue occurred on PaperlessPay's server, which is physically located in Jacksonville, Florida.

---

[1] *See* http://www.paperlesspaycorp.com/aboutus.html (last accessed July 5, 2020).
[2] *See Id* (last accessed July 5, 2020).

28.     Venue is likewise proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district. Defendant is based in this District, conducts business through this District (including promoting, selling, marketing, and distributing the PaperlessPay brand and services at issue), and maintained Class members' PII in this District.

<u>FACTUAL ALLEGATIONS</u>

**A.  The Data Breach and PaperlessPay's Failed Response.**

29.     On or about February 19, 2020, PaperlessPay was contacted by the U.S. Department of Homeland Security and notified that someone was selling access to PaperlessPay's clients' data on a dark web marketplace. An unauthorized third party had accessed PaperlessPay's servers and systems, resulting in the Data Breach and exposure of the PII of at least tens of thousands of persons.

30.     Despite being retained by Employers largely due, in part, to PaperlessPay's supposed ability to securely maintain the PII of the Employers and their Employees, PaperlessPay was unaware of the Data Breach until they were contacted and notified of the Breach by the Department of Homeland Security.

31.     Defendant subsequently began working with the Department of Homeland Security, the Federal Bureau of Investigation, and a private forensic security firm to investigate the Data Breach.

32.     Through these investigations, Defendant confirmed that the unauthorized hacker gained access to its SQL server, where their data (including Plaintiffs' and Class members' PII) is stored.

33.     Upon information and belief, Defendant has tried to conceal and/or downplay the Data Breach. For example, just after notification of the Data Breach had been given to PaperlessPay by the Department of Homeland Security, PaperlessPay shut down its servers, which caused a service disruption to the Employers. However, when contacted by Employers about the service disruption, Defendant simply responded that it had a security issue but failed to provide further details to the Employers regarding the nature of the incident. Defendant did not indicate that there was a Data Breach at that time.

34.     Defendant began notifying Employers of the Data Breach on or around March 20, 2020, over a month after the Data Breach was first discovered. Even so, Defendant made the decision not to notify the individuals whose PII was impacted by the Data Breach.

35.     The stolen PII at issue has great value to the hackers, due to the large number of individuals affected and the fact that bank account information, withholding information, and Social Security Numbers were part of the data that was compromised.

36.     Defendant states on its website that it has over 2 million users who are employees of the impacted Employers, thus making it likely that millions of individuals' PII has been stolen and is being sold, or will be sold in coming months and years, on the dark web.

37.     Based on disclosures that have been made by Employers to states, only a handful of Employers have notified their employees that their PII was compromised in the Data Breach. Thus, it is likely that hundreds of Employers have yet to notify tens of thousands of employees that their PII was compromised.

38.     PaperlessPay may also not be immediately recognizable to Class members because it is a third-party entity contracting with the Employers of said Class members to provide payroll

services. Given this unique dynamic, Defendant's decision not to inform individuals of the Data Breach directly is troubling.

**B. Cyber Criminals Have Used and Will Continue to Use the Employees' PII to Defraud Them.**

39.      PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach can and will be used in a variety sordid ways for criminals to exploit Plaintiffs and the Class members and to profit off their misfortune.

40.      Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[3] For example, with the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[4] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and the Class members.

41.      PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[5]

---

[3]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").
[4]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.
[5] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu

42.     For example, it is believed that certain PII compromised in the 2017 Experian data breach is now being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits in the state of Oklahoma.[6]

43.     This was a financially-motivated Data Breach, as apparent from the discovery of the cyber criminals seeking to profit off of the sale of Plaintiffs' and the Class members' PII on the dark web. The PII exposed in this Data Breach are valuable to identity thieves for use in the kinds of criminal activity described herein.

44.     These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to PII, they will use it.[7]

45.     Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

46.     With this Data Breach, identity thieves have already started to prey on the employee victims of the PaperlessPay Data breach, and we can anticipate that this will continue.

47.     Victims of the Data Breach, like Plaintiffs and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[9]

---

[6]     *See*   https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html;   *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/
[7]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.
[8]*Data Breaches Are Frequent*, *supra* note 11.
[9] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

48.     Employers have acknowledged the harm caused by the Data Breach by offering Plaintiffs and Class members a woefully inadequate twelve months of identity theft repair and monitoring services. Plaintiffs and Class members will need much more than this to protect them from a lifetime of identity theft risk.

49.     Due to the nature of Data Breaches and the compromise of PII, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[10] Once the twelve-month period has expired, Plaintiffs and Class members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to PaperlessPay's gross negligence.

50.     As a direct and proximate result of the Data Breach, Plaintiffs and the Class have been damaged, and have been placed at an imminent, immediate, and continued increased risk of harm from continued fraud and identity theft. Plaintiffs and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

51.     Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a.  Trespass, damage to, and theft of their personal property including PII;

    b.  Improper disclosure of their PII;

---

[10] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and having been already misused;

d. Damages flowing from Defendant's untimely and inadequate notification of the data breach;

e. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII and that identity thieves have already used that information to defraud other victims of the Data Breach;

f. Ascertainable losses in the form of time taken off work to respond to identity theft and attempt to restore identity, including lost opportunities, wasted paid-time off, and lost wages from uncompensated time off;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h. Ascertainable losses in the form of deprivation of the value of Plaintiffs' and Class members' personal information for which there is a well-established and quantifiable national and international market.

52.     Moreover, Plaintiffs and Class members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself wholly incapable of protecting Plaintiffs' PII.

53.     Plaintiffs are desperately trying to mitigate the damage that PaperlessPay has caused them but, given the kind of PII PaperlessPay made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their PII, Plaintiffs and all Class members will need to have identity theft monitoring protection for the rest of their lives. Some

may even need to go through the long and arduous process of getting a new Social Security Number, with all the loss of credit and employment difficulties that come with this change.[11]

54.     None of this should have happened. The Data Breach was preventable.

**C.  Defendant was Aware of the Risk of Cyberattacks.**

55.     Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it.

56.     In the wake of the rise in data breaches, the Federal Trade Commission has issued an abundance of guidance for companies in an effort to help them avoid falling victim to these attacks.[12]

57.     Furthermore, data breach issues were at a record high in 2019. According to statistics from norton.com, there was a 54% increase in publicly reported data breaches in the first six months of 2019 compared to the first six months of 2018.[13]

58.     The general public can tell you the names of some of the biggest data breaches to date: Target[14], Yahoo,[15] Marriott International,[16] Chipotle, Chili's, Arby's,[17] and others.[18]

---

[11]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.
[12] *See e.g.*, *Protecting Personal Information: A Guide for Business*, FTC, available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.
[13] *See 2019 Data Breaches: 4 Billion Records Breached So Far*, Norton, available at https://us.norton.com/internetsecurity-emerging-threats-2019-data-breaches.html.
[14]Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.
[15]Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.
[16]Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/.
[17]Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, C|NET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.
[18]*See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Dec. 20, 2018), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

59.     Defendant is also aware of the risk of cyberattacks and hacking threats by unknown third parties, evidenced by Defendant's providing a white paper on its website discussing the security of its servers and services.

60.     Although Defendant was trusted by thousands of Employers and millions of people employed by those Employers to maintain the integrity of their PII, that trust was belied by Defendant's failure to impose and maintain the necessary safeguards that would have prevented the Data Breach.

61.     Defendant clearly knew or should have known of the risks of potential data breaches and should have ensured that the adequate protections against such were in place.

62.     In its secure technology advertisements, PaperlessPay states: "At PaperlessPay Corporation, we have created the most secure and comprehensive online pay advice portal available in today's market."[19]  Additionally, Defendant boasts of continual evaluation of its "layers of security" and its commitment to "implement the latest industry techniques and technology to protect your data."[20]

63.     Given Paperlesspay's representation of itself as meeting a higher standard of cybersecurity, the Court should hold PaperlessPay to this heightened standard.

64.     PaperlessPay was therefore clearly aware of the risks it was taking and the harm that could result. Had PaperlessPay done as it promised, the Data Breach would not have happened, and Plaintiffs and Class members would not have been damaged.

---

[19] *See* http://www.paperlesspaycorp.com/aboutus.html (last accessed July 6, 2020).
[20] *See* http://www.paperlesspaycorp.com/security.html (last accessed July 6, 2020).

**D. PaperlessPay Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiffs' and Class Members' PII.**

65.     Data breaches are preventable.[21] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[22] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[23]

66.     "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[24]

67.     PaperlessPay, through the Employers, required Plaintiffs and Class members to surrender their PII, including their names, addresses, Social Security Numbers, pay and withholdings, and bank account information, and were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such PII.

68.     By providing payroll services to the Employers, Defendant acted as an agent of the Employers and thus the Employers' fiduciary duties are imputed to Defendant as the guardian of Plaintiffs' and Class members' PII.

69.     Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with PaperlessPay's failure to incur the

---

[21]Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[22]*Id.* at 17.
[23]*Id.* at 28.
[24]*Id.*

costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiffs' and Class members' PII.

70.     Defendant maintained the PII in a reckless manner. In particular, the PII was maintained unencrypted on Defendant's servers in a condition vulnerable to cyberattacks.

71.     Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if Plaintiffs' and Class members' PII was stolen, including the significant costs that would be placed on Plaintiffs and Class members as a result of a breach.

72.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiffs' and Class members' PII from those risks left that information in a dangerous condition.

73.     Defendant disregarded the rights of Plaintiffs and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiffs' and Class members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach; and (v) failing to provide Plaintiffs and Class members prompt and accurate notice of the Data Breach.

**E.  PaperlessPay's Response to the Data Breach is Inadequate to Protect Plaintiffs and the Class**

74.     Plaintiffs are unaware of any actions on the part of Defendant to directly notify Plaintiffs or Class members impacted by the Data Breach that their PII was compromised.

75.     To the extent that Plaintiffs have been notified of the Data Breach, it has only been through their respective Employers, not by Defendant.

76.     In addition to its failure to notify Plaintiffs and Class members of the Data Breach, Defendant has also failed to offer any identity theft monitoring services to Plaintiffs and Class members to mitigate the harms caused by the Data Breach.

77.     Additionally, PaperlessPay stated that it discovered the Data Breach in February of 2020. No one began notifying the impacted employees until May 2020.

78.     During these intervals, the cyber criminals were exploiting the Plaintiffs' and Class members' PII while PaperlessPay was secretly still investigating the Data Breach.

## CHOICE OF LAW FOR CLASS CLAIMS

79.     The State of Florida has a significant interest in regulating the conduct of businesses operating within its borders. Florida seeks to protect the rights and interests of all Florida residents and citizens of the United States against a company headquartered and doing business in Florida. Florida has a greater interest in the nationwide claims of Plaintiffs and members of the Nationwide Class (defined below) than any other state and is most intimately concerned with the claims and outcome of this litigation.

80.     The corporate headquarters of PaperlessPay, located in Jacksonville, Florida, is the "nerve center" of its business activities – the place where its high-level officers and executives direct, control, and coordinate the company's activities, including its data security functions and major policy, financial, and legal decisions.

81.     PaperlessPay's response to the Data Breach at issue here, and corporate decisions surrounding such response, were made from Florida.

82.     PaperlessPay's breaches of duty to Plaintiffs and Nationwide Class members emanated from Florida.

83.     PaperlessPay's server that contained Plaintiffs and Nationwide Class members' sensitive information was located in Jacksonville, Florida at the time of the Data Breach.

84.     Application of Florida law to the Nationwide Class with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because Florida has significant contacts and significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Nationwide Class.

85.     Under Florida's choice of law principles, which are applicable to this action, the common law of Florida applies to the nationwide common law claims of all Nationwide Class members. Additionally, given Florida's significant interest in regulating the conduct of businesses operating within its borders, Florida's Deceptive and Unfair Trade Practices Act may be applied to non-resident consumer plaintiffs as against this resident-Defendant.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this action against PaperlessPay on behalf of themselves and all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiffs assert all claims on behalf of the class and subclasses defined as follows:

**Nationwide Class**

**All persons residing in the United States whose personally identifiable information was compromised as a result of the Data Breach at PaperlessPay Corporation that occurred in February 2020.**

**Canadian Subclass**

> All persons residing in Canada whose personally identifiable information was compromised as a result of the Data Breach at PaperlessPay Corporation that occurred in February 2020.

**Texas Subclass**

> All persons residing in Texas whose personally identifiable information was compromised as a result of the Data Breach at PaperlessPay Corporation in February 2020.

87.     Excluded from the Nationwide Class and Subclasses are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

88.     Plaintiffs reserve the right to amend the above definitions or to propose alternative or additional subclasses subsequent pleadings and motions for class certification.

89.     The Nationwide Class, the Canadian Subclass, and the Texas Subclass are collectively referred to as the "Class" unless otherwise specified.

   a. **Class Certification is Appropriate**

90.     The proposed Class and any additional subclasses meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

91.     **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. Each of the proposed Subclasses also are believed to be so numerous that joinder of all members would be impractical, as a significant portion of the 2 million individuals likely affected were either current or former employees of the 1,500 affected Employers.

18

92.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through PaperlessPay's uniform misconduct. The same event and conduct that gave rise to Plaintiffs' claims are identical to those that give rise to the claims of every other Class member because Plaintiffs and each member of the Class had their sensitive PII compromised in the same way by the same conduct of PaperlessPay.

93.    **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the Class and proposed Subclasses that they seek to represent; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

94.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress PaperlessPay's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

95.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions

predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

**b.** Whether Defendant engaged in the wrongful conduct alleged herein;

**c.** Whether Defendant failed to adequately safeguard Plaintiffs' and the Class's PII;

**d.** Whether Defendant owed a duty to Plaintiffs and the Class to adequately protect their PII, and whether it breached this duty;

**e.** Whether PaperlessPay violated state and federal laws, thereby breaching its duties to Plaintiffs and the Class as a result of the Data Breach;

**f.** Whether PaperlessPay knew or should have known that its computer and network security systems were vulnerable to a data breach;

**g.** Whether PaperlessPay's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

**h.** Whether PaperlessPay breached contractual duties to Plaintiffs and the Class to use reasonable care in protecting their PII;

**i.** Whether PaperlessPay failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

**j.** Whether PaperlessPay continues to breach duties to Plaintiffs and the Class;

**k.** Whether Plaintiffs and the Class suffered injury as a proximate result of PaperlessPay's negligent actions or failures to act;

**l.** Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief; and

20

**m.** Whether PaperlessPay's actions alleged herein constitute gross negligence, and whether Plaintiffs and Class members are entitled to punitive damages.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

96.     Plaintiffs incorporate by reference paragraphs 1-10, 11-25, and 29-86 as if fully set forth herein.

97.     As a condition of their employment, Plaintiffs and Class members were obligated to provide their Employers, and in turn, PaperlessPay, with their PII.

98.     Upon accepting and storing the PII of Plaintiffs and Class members on its computer systems and networks, PaperlessPay undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class members could and would suffer if the PII was wrongfully disclosed. Plaintiffs and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and the Class members had no ability to protect their PII that was in PaperlessPay's possession. As such, a special relationship existed between PaperlessPay and Plaintiffs and the Class.

99.     Defendant was well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal customer and employee PII.

100.     Defendant owed Plaintiffs and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining, storing, using, and managing personal information, including taking action to

21

reasonably safeguard such data and providing notification to Plaintiffs and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

101.     Defendant's duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

102.     Defendant had duties to protect and safeguard the PII of Plaintiffs and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive PII. Additional duties that PaperlessPay owed Plaintiffs and the Class include:

**a.** To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing PaperlessPay's networks, systems, protocols, policies, procedures and practices to ensure that Plainitffs' and Class members' PII was adequately secured from impermissible release, disclosure, and publication;

**b.** To protect Plaintiffs' and Class members' PII in its possession by using reasonable and adequate security procedures and systems;

**c.** To implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers; and

**d.** To promptly notify Plaintiffs and Class members of any data breach, security incident, or intrusion that affected or may have affected their PII.

103.     Plaintiffs and the Class were the intended beneficiaries of Defendant's duties, creating a special relationship between them and PaperlessPay. Defendant was in a position to ensure that its systems were sufficient to protect the PII that Plaintiffs and the Class had entrusted to it.

104. Defendant breached its duties of care by failing to adequately protect Plaintiffs' and Class members' PII. Defendant breached its duties by, among other things:

    **a.** Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, and protecting the PII in its possession;

    **b.** Failing to protect the PII in its possession using reasonable and adequate security procedures and systems;

    **c.** Failing to consistently enforce security policies aimed at protecting Plaintiffs and the Class's PII;

    **d.** Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

    **e.** Failing to promptly notify Plaintiffs and Class members of the Data Breach that affected their PII.

105. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

106. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiffs and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

107. Through PaperlessPay's acts and omissions described herein, including but not limited to PaperlessPay's failure to protect the PII of Plaintiffs and Class members from being stolen and misused, PaperlessPay unlawfully breached its duty to use reasonable care to adequately protect and secure the PII of Plaintiffs and Class members while it was within PaperlessPay's possession and control.

108.     Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class members, PaperlessPay prevented Plaintiffs and Class members from taking meaningful, proactive steps to securing their PII and mitigating damages.

109.     As a result of the Data Breach, Plaintiffs and Class members have spent time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, signing up for credit monitoring and identity theft prevention services and closely reviewing and monitoring bank accounts and credit reports.

110.     PaperlessPay's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

111.     The damages Plaintiffs and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

112.     Plaintiffs and the Class have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)

113.     Plaintiffs incorporate by reference paragraphs 1-10, 11-25, and 29-86 as if fully set forth herein.

114.     Plaintiffs and the Class bring this claim in the alternative to all other claims and remedies at law.

115.     Plaintiffs and Class members conferred a monetary benefit upon PaperlessPay in the form of monetary payments – directly or indirectly – for providing payroll services for their Employers.

116.    PaperlessPay collected, maintained, and stored the PII of Plaintiffs and Class members and, as such, PaperlessPay had knowledge of the monetary benefits conferred by the Employers on behalf of the Plaintiffs and Class members.

117.    Defendant, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with Plaintiffs and the Class members and Florida Consumer Protection laws, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on data security measures to secure Plaintiffs' and Class members' PII.

118.    Instead of providing for a reasonable level of security that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar PII, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiffs and Class members.

119.    As a direct and proximate result of PaperlessPay's decision to profit rather than provide adequate data security, Plaintiffs and Class members suffered and continue to suffer actual damages in (i) the amount of the savings and costs PaperlessPay reasonably and contractually should have expended on data security measures to secure Plaintiffs' PII, (ii) time and expenses mitigating harms, (iii) diminished value of PII, (iv) loss of privacy, and (v) an increased risk of future identity theft.

120.    Defendant, upon information and belief, has therefore engaged in opportunistic, unethical, and immoral conduct by profiting off of conduct that it knew was creating a significant and highly likely risk of substantial and certainly impending harm to Plaintiffs and the Class in direct violation of Plaintiffs' and Class members' legally protected interests. As such, it would be

25

inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its breach.

121.    Accordingly, Plaintiffs and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiffs and the Class.

**THIRD CAUSE OF ACTION**
**THIRD-PARTY BENEFICIARY BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

122.    Plaintiffs incorporate by reference paragraphs 1-10, 11-25, and 29-86 as if fully set forth herein.

123.    Plaintiffs and Class members are intended third-party beneficiaries of express or implied contracts entered into between PaperlessPay and its clients, the Employers.

124.    Upon information and belief, these contracts included promises made by PaperlessPay that expressed and/or manifested intent that the contracts were made to primarily and directly benefit the Plaintiffs and the Class (employees of the Employers entering into the contracts), as PaperlessPay's service was to aid the Employers in not only paying and conducting other beneficial payroll services for Plaintiffs and the Class, but also safeguarding the PII entrusted to PaperlessPay in the process of providing these services.

125.    Upon information and belief, PaperlessPay's representations required PaperlessPay to implement the necessary security measures to protect Plaintiffs' and Class members' PII.

126.    The Contract was therefore made primarily for the benefit of Plaintiffs and Class members, with PaperlessPay promising to maintain the security of Plaintiffs' and Class members' PII while the Employers used PaperlessPay services to pay and otherwise benefit Plaintiffs.

127.    Alternatively and upon information and belief, these contracts between PaperlessPay and Employers included implied terms requiring PaperlessPay to implement data security adequate to safeguard and protect the confidentiality of Plaintiffs' and Class members' PII, including in accordance with federal, state and local laws and industry standards.

128.    The Employers would not have entered into these contracts with PaperlessPay without the promises made by PaperlessPay that it would protect and maintain secure the PII of the Plaintiffs and Class members.

129.    As such, a meeting of the minds occurred and PaperlessPay received Plaintiffs' and Class members' PII in exchange for, among other things, the promised protection of the PII.

130.    Exposure, breach, and identity theft were the expected risks both contracting parties could foresee from the improper performance of the Contract.

131.    As a result of PaperlessPay's failure to fulfill the data security protections promised in these contracts, Plaintiffs, Class members, and the Employers did not receive the full benefit of the bargain.

132.    Had PaperlessPay disclosed that its data security was inadequate to protect and keep the PII confidential, neither the Employers, Plaintiffs, Class members, nor any other reasonable person would have entered into such contracts with PaperlessPay.

133.    As a result of the Data Breach, Plaintiffs and Class members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and there remains a substantial likelihood of identity theft and other damages that is certainly pending, continuous and ongoing because of the Data Breach.

134.    The injuries suffered by Plaintiffs and Class members were the kind that proper performance was intended to prevent.

135.     Accordingly, Plaintiffs and Class members are entitled to damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

136.     Plaintiffs incorporate by reference paragraphs 1-10, 11-25, and 29-86 as if fully set forth herein.

137.     Plaintiffs' and Class members' PII was provided to PaperlessPay as part of the payroll services that PaperlessPay provided to Plaintiffs' and Class members' Employers.

138.     In exchange, the Employers agreed to pay PaperlessPay money for these payroll services, which included PaperlessPay's provision of data security and maintenance of Plaintiffs' and Class members' PII.

139.     Plaintiffs and Class members are thus third-party beneficiaries to the contracts entered into by the Employers and PaperlessPay.

140.     By providing payroll services for the Employers, PaperlessPay and the Employers entered into implied contracts for the provision of adequate data security, separate and apart from any contracts concerning the security of Plaintiffs' and Class members' PII, whereby PaperlessPay was obligated to take reasonable steps to secure and safeguard Plaintiffs' and Class members' PII.

141.     PaperlessPay had an implied duty of good faith to ensure that the PII of Plaintiffs and Class members in its possession was only used in accordance with its contractual obligations.

142.     PaperlessPay was, therefore, required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs' and Class

members' PII and to comply with industry standards and applicable laws and regulations for the security of this information.

143.    Under these implied contracts pertaining to data security of PII, PaperlessPay was further obligated to provide Plaintiffs and all Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

144.    PaperlessPay breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class members' PII, resulting in the Data Breach.

145.    PaperlessPay has not yet provided notification to Plaintiffs and Class members, who are at imminent risk of becoming victims of identity fraud or theft, of the Data Breach. Many Class members are likely unaware of the potential source for the compromise of their PII.

146.    The Data Breach was a reasonably foreseeable consequence of PaperlessPay's actions (or lack thereof) in breach of these contracts.

147.    As a result of PaperlessPay's misconduct, Plaintiffs, Class members, and the Employers did not receive the full benefit of the contractual bargain.

148.    Had PaperlessPay disclosed that its data security measures were inadequate to protect the Plaintiffs' and Class members' PII, neither the Employers, Plaintiffs, Class members, nor any other reasonable person would have entered into such contracts with PaperlessPay.

149.    As a result of the Data Breach, Plaintiffs and Class members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and remain at imminent risk of suffering additional damages in the future.

150.    As a result of the Data Breach, Plaintiffs and Class members have suffered actual damages resulting from their attempt to mitigate the effects of the breach of contract and subsequent Data Breach, including but not limited to, monitoring of their credit and taking steps

to protect themselves from the loss of their PII and mitigate the highly likely effects of identity theft.

### FIFTH CAUSE OF ACTION
### DECLARATORY RELIEF
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

151.    Plaintiffs incorporate by reference paragraphs 1-10, 11-25, and 29-86 as if fully set forth herein.

152.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

153.    As previously alleged and pleaded, Defendant owes duties of care to Plaintiffs and Class members that require it to adequately secure their PII.

154.    Defendant still possesses the PII of Plaintiffs and the Class members.

155.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiffs and the Class members.

156.    Upon information and belief, Defendant is taking some steps to increase its data security but there is nothing to prevent Defendant from reversing these changes once it has weathered the increased public attention resulting from this Data Breach, and to once again place profits above protection.

157.    Plaintiffs, therefore, seek a declaration that (1) Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

a.  Ordering Defendant to engage third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering Defendant to significantly increase its spending on cybersecurity, including systems and personnel;

c.  Ordering Defendant to engage third-party security auditors and internal personnel to run automated security monitoring;

d.  Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

e.  Ordering that Defendant purge, delete, and destroy in a reasonably secure manner any PII not necessary for its provisions of services;

f.  Ordering that Defendant conduct regular database scanning and securing checks;

g.  Ordering Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

h.  Ordering Defendant to implement and enforce adequate retention policies for PII, including destroying PII as soon as it is no longer necessary for it to be retained; and

i.  Ordering Defendant to meaningfully educate those utilizing its services, including Employers and their employees, about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendant as follows:

a.   An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b.   A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including actual damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.   An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.   An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.   A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.   An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated: July 31, 2020

Respectfully submitted,

*/s/ William B, Federman*
\*William B. Federman, OBA #2853
Tyler J. Bean, OBA #33834
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com
tjb@federmanlaw.com

#Michael S. Hill
Florida Bar #37068
MENZER & HILL, P.A.
7280 W. Palmetto Park Road, Suite 203
Boca Raton, FL 33433
(561)-327-7205
(561)-880-8449 (facsimile)
mhill@menzerhill.com

*Counsel for Plaintiffs and the Putative Class*
*\*To Be Admitted Pro Hac Vice*
*#Local counsel*

### CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

_/s/ Michael S. Hill_____
Michael S. Hill